

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5107 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Donald L. Gutman vs. Henry Pratt Company | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court grants defendant Pratt's motion for summary judgment [17-1] on Gutman's federal claims and dismisses without prejudice Gutman's state law claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | SEP 3 0 2002 | |
| | Notified counsel by telephone. | | | date docketed | 30 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| KMc | | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 SEP 30 PM 2:18 | | mailing deputy initials |
| | | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



DONALD L. GUTMAN, )
)
    Plaintiff, )
)
v. ) No. 99 C 5107
)
HENRY PRATT COMPANY, a Delaware ) Magistrate Judge Nan R. Nolan
corporation, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Donald L. Gutman sued his former employer Henry Pratt Company ("Pratt") alleging that

Pratt terminated him (i) based on his race, in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq*; (ii) based on his age, in violation of the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*; and (iii) in retaliation for his filing

of a workman's compensation claim, in violation of Illinois law. The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court

is Pratt's Motion for Summary Judgment (Docket Entry #17). For the following reasons, the Court

GRANTS Pratt's motion for summary judgment on Gutman's federal claims, and DISMISSES

WITHOUT PREJUDICE Gutman's state-law claim.

## BACKGROUND[1]

Donald Gutman, a Caucasian, worked for Pratt from April 1990 until his termination on

November 12, 1998. (Def.'s Statement of Material Facts ¶ 3.) Gutman was sixty-three years old

---

[1] Due to the plaintiff's failure to comply with Local Rule 56.1, *see infra* at 7-9, the Court has
deemed admitted almost all of the facts listed in the Defendant's Statement of Material Facts.

when he was terminated. (Def.'s Statement of Material Facts ¶ 4.) Pratt states that it fired Gutman because he failed to provide appropriate medical documentation regarding a prolonged absence from work. (Def.'s Statement of Material Facts ¶ 38.)

Gutman missed work for medical reasons twice in the late 1990s. In November 1997, Gutman had back surgery. (Def.'s Statement of Material Facts ¶ 19.) He returned to work in February 1998 with certain restrictions. (*Id.*) Gutman supplied Pratt with sufficient medical documentation to substantiate his absence. (Pl.'s Additional Facts in Opp. to Summ. J. ¶ 8.) Pratt did not discipline Gutman for his excused absences during this period. (*Id.*)

In the summer of 1998, Gutman injured his back at work. (Gutman Aff. ¶ 8.) Although the record is not entirely clear, it appears that Gutman was initially examined by a physician named Dr. Rieger who opined that Gutman could return to work with certain restrictions. (Def.'s Mot. for Summ. J., Exs. V(A), (D); Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Exs. 3, 6.) It also appears that Gutman was next examined by another physician—Dr. Pahwa—who concurred with Dr. Rieger's assessment that Gutman could return to work. (Def.'s Statement of Material Facts ¶ 31; Def.'s Mot. for Summ. J., Exs. V(A), (D); Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 3.)

On September 28, 1998, Gutman did not show up at work. (Def.'s Statement of Material Facts ¶ 31; Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 4.) Instead, he visited Dr. Greg Markarian regarding his back injury. (Gutman Aff. ¶ 8.) Dr. Markarian wrote a note stating that "Donald Gutman has been under my care and is unable to return to work until further notice." (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts Ex. 11.) Gutman provided the note to Pratt. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 6.) However,

Gutman did not provide Pratt with a diagnosis from his doctor, i.e., Gutman did not provide Pratt with documentation from Dr. Markarian explaining why Gutman was unable to return to work. (Def.'s Statement of Material Facts ¶ 30.)[2]

On September 28 and 29, 1998, Gutman communicated via e-mail with Pratt employee Raj Dave regarding his absence.[3] In the first e-mail, Gutman informed Dave that he was still experiencing problems with his back and that he will not come into work that day. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 4.) Dave wrote back, advising Gutman that (1) it was the company's position that Dr. Rieger had released him to return to work with certain restrictions that would not interfere with Gutman's job duties, (2) the company had expected Gutman to return to work on September 28, and (3) his absence will be considered an unexcused absence. (*Id.*) Gutman replied, stating that he no longer considered Dr. Rieger to be his treating physician and that his new treating physician—Dr. Markarian—had advised him to remain off work until further notice. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 3.) In his response, Dave informed Gutman of the company's position regarding Dr. Markarian's note:

> I did look at your new doctor's note. This is an open-ended note. The doctor has not specified restrictions nor he has [sic] any idea of what kind of accommodations we can make. As of now, from company perspective, your ex-physician (Dr. Rieger) and

---

[2] Gutman contends that he provided a diagnosis to Pratt in August 1998 along with a copy of his scheduled therapy. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts ¶ 30.) In support, Gutman cites to exhibit five of his response. (*Id.*) Exhibit five is document containing both printed and handwritten information. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 5.) The printed portion of that document is largely illegible. (*Id.*) The handwritten portion of the document—written by Gutman—identifies the printed information as Gutman's therapy schedule and further states that Gutman had been diagnosed with a herniated disk. (*Id.*) This document does not establish that Gutman provided Pratt with a diagnosis *from his doctor*.

[3] The parties do not identify Dave's position with the company.

IME (Dr. Pahwa) evaluations of you being able to return to work (with restriction within your job duties) is applicable and we need you to comply with that release.

(Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 6.)

Gutman did not return to work. On September 30 he filed a worker's compensation claim. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 1.) Although the record does not contain a document stating the disposition of that claim, a subsequent correspondence from Gutman indicates that the claim was denied. (Def.'s Mot. for Summ. J., Ex. V(C).)

There was no further communication between Gutman and Pratt until early October. On October 2, Pratt's Human Resources Manager Valerie Parker sent Gutman a letter reiterating Pratt's position that Dr. Markarian's note was insufficient due to lack of information. (Def.'s Statement of Material Facts ¶ 29.) Parker's letter also states Pratt's understanding of the events surrounding Gutman's absence from work and warned Gutman of the consequence of accumulating unexcused absences:

> On September 25, 1998, you were released from the care of Dr. Rieger with certain restrictions we are able to accommodate. Based on the treating physician's determination, as well as that of the Independent Medical Examiner (IME) you were found fit to return to work; we expected you would be here on Monday, September 28, 1998.
>
> The lack of information in your doctor's notice is unacceptable. Dr. Markarian has apparently made a determination about your ability to work without information from the Company that would help him in his assessment.
>
> As communicated with you by Raj Dave, when you are going to be absent, you must contact your manager, Glenn Beane by telephone. The Human Resources Department will not be able to pass along messages to your manager concerning your attendance. If you do not communicate directly with you manager and are absent, this will be considered a no call/no show, for which three of these subjects you to immediate termination.

(Def.'s Mot. for Summ. J., Ex. V(A).)

-4-

On October 5, Gutman sent letters to his supervisor and Valerie Parker advising them that Dr. Markarian had "placed [him] in an 'off work' condition until further notice" and that another doctor—Dr. Steven J. Bielski—had advised him to remain off work until the doctor could perform an echo-cardiogram. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Exs. 9, 10.) On October 7, Gutman's lawyer wrote a letter informing Pratt that his client had been advised by Dr. Bielski to remain off work until the doctor could perform an echo-cardiogram of Gutman. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Ex. 2.) Attached to the letter is a note from Dr. Bielski dated October 5, 1998, which states that Gutman "may return to work after stress echocardiogram is completed." (Def.'s Statement of Material Facts ¶ 36; Def.'s Mot. for Summ. J., Ex. V(E).) Gutman underwent the echo-cardiogram on October 13, 1998. (Def.'s Statement of Material Facts ¶ 37.) The record does not indicate the result of that test. (Def.'s Mot. for Summ. J., Ex. V(F).)

On October 26, Gutman sent a letter to Parker inquiring as to his payroll status. (Def.'s Statement of Material Facts ¶ 33.) According to the letter, Gutman had not received his salary since September 15, 1998. (Def.'s Mot. for Summ. J., Ex. V(C).) In the letter, Gutman acknowledges that his worker's compensation claim had been denied, but states that he has not yet returned to work based on the advice of his doctors. (*Id.*) In response to the October 26 letter, Parker sent another letter to Gutman on October 29. (Def.'s Statement of Material Facts ¶¶ 34, 35; Def.'s Mot. for Summ. J., Ex. V(D).) The pertinent portion of that letter states the following:

> On September 25, 1998, you were released from the care of Dr. Rieger with certain restrictions we were able to meet. Based on the treating physician's determination, as well as that of the Independent Medical Examiner (IME) you were found fit to return to work. We expected your return on September 28, 1998. However, you did not return, instead you brought in a doctor's slip from Dr. Markarian of the

Orthopedic Associates of Naperville stating you were unable to work until further notice. That letter is clearly insufficient documentation.

On October 5, 1998, the Company received a letter from you stating that you were still under the care of Dr. Markarian and that you were also seeing your primary care physician, Dr. Bielski. Dr. Bielski's documentation of October 5, 1998 states that you were to return to work after completing an echocardiogram. It is now October 28, 1998, and we do not know the status of your medical condition as told by your treating physician(s).

Up until this point, the information we have received from you physicians is, at best, insufficient. The correspondences also fail to inform the Company of why you were absent from September 28-October 5, 1998.

(*Id.*) The letter further states that Pratt would review Gutman's salary concerns once the company had received a thorough communication of his condition from his doctor. (*Id.*) Gutman did not provide Pratt with any further documentation regarding his injury.

In order to terminate an employee, Pratt's Human Resources Department must obtain approval from Pratt General Manager Randy Berger. (Def.'s Statement of Material Facts ¶ 44.) In early November, Berger approved Parker's recommendation that Gutman be terminated. (Def.'s Statement of Material Facts ¶ 46.) According to Parker and Berger, the decision to terminate Gutman was based solely on his failure to provide medical information to substantiate his absences from work—the decision was not based on his work performance (i.e., his performance when he was at work) or his filing of a worker's compensation claim. (Def.'s Statement of Material Facts ¶¶ 22, 38-43, 45-46; Parker Aff. ¶¶ 5-7, 9; Berger Aff. ¶¶ 5, 7.) On November 12, 1998, Pratt sent Gutman a letter notifying him that he had been terminated based on his failure to provide appropriate medical documentation regarding his prolonged absence from work. (Def.'s Statement of Material Facts ¶ 38; Def.'s Mot. for Summ. J., Ex. V(G).)

Pratt replaced Gutman with Tom Galante, a Caucasian. (Def.'s Statement of Material Facts ¶ 18.)[4]

## DISCUSSION

In addition to its summary judgment motion, Pratt moves the Court to deem certain facts admitted based on Gutman's failure to comply with Local Rule 56.1. Because the Court's ruling on this motion will affect what evidence may be considered for summary judgment purposes, the Court's analysis begins with Pratt's motion to deem certain facts admitted.

### Pratt's Motion to Deem Certain Facts Admitted

Local Rule 56.1(b)(3)(A) states that each party opposing a motion for summary judgment shall serve and file a concise response to the movant's statement of material facts that shall contain "a response to each numbered paragraph in the moving party' s statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Courts in the Northern District of Illinois require strict compliance with Local Rule 56.1. *Markam v. White*, 172 F.3d 486, 490 (7th Cir. 1999); *Klaus v. Builders Concrete Co.*, No. 00 C 7757, 2002 WL 207118, at *1 (N.D. Ill. Feb. 8, 2002); *Williams v. Chicago Bd. of Educ.*, No. 98 C 4583, 2000 WL 1425289, at *1 n.2 (N.D. Ill. Sept. 26, 2000). Accordingly, all relevant facts denied by a party without specific references to the record may be deemed admitted provided the facts themselves are properly supported by references to the record. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000).

Gutman's response to Pratt's statement of material facts violates Rule 56.1. Gutman's response contains only four citations to the record. (Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, ¶¶ 21, 24, 25, 30.) To the extent that these responses are supported by the record,

---

[4] Neither party's Rule 56.1 statement lists Galante's age at the time he replaced Gutman.

the Court has considered the underlying facts in the light most favorable to Gutman. Regarding the rest of Gutman's responses, however, the Court notes that none of them contain a single citation to the record. Accordingly, each of those facts asserted by Pratt shall be deemed admitted provided that the facts themselves are supported by the record. After examining Pratt's citations to the record, the Court concludes that the facts listed in Pratt's Statement of Material Facts are supported by the record except for the following three facts:

1. Material Fact #10

The defendant's material fact #10 states: "None of Plaintiff's supervisors nor any other Henry Pratt employees said anything directly to Plaintiff that would suggest that he could not do his job because of his age with respect to Plaintiff's moves from one position to another. (Plaintiff's Dep. p. 49, 60-61)." The cited portions of Gutman's deposition, however, refer to only one of Gutman's transfers. Specifically, Gutman testified that no Pratt employee made an age-based statement directly to him regarding his move from the Nuclear Department to the Customer Service Department. (Gutman Dep. at 49.) Gutman also testified that he could not remember Pratt employee Don Kennedy making any reference to Gutman's age or race during a specific conversation regarding a negative evaluation of Gutman's performance. (*Id.* at 60-61.) Neither of these statements is as broad as defendant's material fact #10.

2. Material Fact #20

The defendant's material fact #20 states: "In July and August of 1998, Plaintiff visited several doctors alleging a work related injury stemming from an incident on July 28, 1998. None of the doctors diagnosed a work related injury and finally one doctor concluded that the injury was not related to Plaintiff's employment. (Plaintiff Dep. p. 112-114)." The cited portion of Gutman's deposition states that he visited three doctors and that one of these doctors concluded that Gutman's injury was not work related. (Gutman Dep. at 112-14.) Gutman did not testify that none of these doctors diagnosed a work-related injury.

### 3. Material Fact #27

The defendant's material fact #27 states that "Defendant's comply policies were conveyed to the employees in writing and orally. (Parker Dep. p. 25)." Parker's deposition testimony on page twenty-five does not support this fact.

Except for these three facts and Gutman's four responses that contain specific citations to the record, the Court deems admitted all of the material facts listed in the defendant's statement of material facts.

**Pratt's Motion for Summary Judgment**

Gutman alleges that Pratt terminated him (i) based on his race, in violation of Title VII, (ii) based on his age, in violation of the ADEA, and (iii) in retaliation for his filing of a workman's compensation claim, in violation of Illinois law. Pratt moves for summary judgment on all three claims.

<u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

## I. Age Discrimination Claim

At the summary judgment stage, there are two basic methods of proof in employment discrimination cases. Under the first method, a plaintiff may use direct evidence to prove that he suffered an adverse employment action based on an impermissible criteria. The second method is the familiar burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Gutman argues that he has presented both direct and indirect evidence that Pratt discriminated against him based on his age.

Direct Evidence

In this case, Gutman contends that he has presented direct evidence that he suffered three adverse employment actions based on his age. According to Gutman, the first adverse employment action occurred when he was transferred out of the Nuclear Department in 1995. Gutman believes that this transfer was based on his age because Pratt employee Don Kennedy told him that "it was becoming company policy to replace the older workers with younger workers." (Gutman Aff. ¶ 5.) Regarding the second adverse employment action, Gutman asserts that his supervisor Glenn Beane "repeatedly and systematically derided and antagonized [him] both orally and through the job review process." (Gutman Aff. ¶ 6.) Gutman believes that Beane's abusive conduct was based on Gutman's age because Beane told Gutman in 1995 that Gutman was a "Senior Project Manager" instead of a "Project Manager" because he was "old." (*Id.*) Finally, Gutman alleges that his termination was an adverse employment action.

It is unclear whether Gutman contends that his complaint covers all three of these allegedly adverse employment actions. To the extent that he is arguing such a position, the Court concludes that the first two adverse employment actions are outside the scope of both Gutman's charge of discrimination filed with the Equal Employment Opportunity Commission and his complaint. Because those documents allege only that Pratt discriminated against Gutman when it terminated him, Def.'s Mot. for Summ. J., Ex. V(J), he may not pursue different theories in this Court. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002) (holding that because plaintiff's EEOC charge listed only discriminatory termination claim, plaintiff could not pursue failure-to-transfer theory in the district court). Accordingly, Gutman cannot defeat summary judgment by arguing that Pratt discriminated against him by transferring him out of the Nuclear Department or by subjecting his to allegedly abusive treatment in 1995.

Even if the complaint could be construed to cover these two other theories, the Court notes that there are other barriers to recovery on these claims. As an initial matter, the Court notes that the claims would most likely be barred by the statute of limitations. The demotion and the derogatory conduct reference by Gutman both occurred in the mid-1990's. Thus, it is likely that the 300-day statute of limitations had expired prior to the filing of Gutman's complaint in August 1999. *See Tucker v. Cassiday, Schade & Gloor*, No. 99 C 4001, 2002 WL 126101, at *2 (N.D. Ill. Jan. 31, 2002) (stating that in Illinois, ADEA plaintiffs must file complaint with proper administrative agency within 300 days of the alleged discriminatory employment action). Moreover, Gutman has made no attempt to establish a prima facie case for these claims. Not all transfers qualify as materially adverse employment actions. *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir. 2001) (holding that "a lateral transfer without a loss in benefits does not constitute an adverse employment

-11-

action"). Gutman's assertion that his transfer out of the Nuclear Department was "essentially a demotion" is insufficient to establish that the transfer qualifies as an adverse employment action. Similarly, Gutman fails to identify any evidence (other than his conclusory and self-serving affidavit) regarding Beane's allegedly abusive conduct. Such statements are insufficient to raise an inference of discrimination. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) (finding no inference of discrimination based on employer's alleged past discriminatory treatment where plaintiff offered only conclusory assertions of past discrimination). Finally, regarding his 1995 transfer from the Nuclear Department, Gutman fails to identify any evidence indicating that Don Kennedy—the employee who allegedly made the age-related remark—was involved in the decision to transfer him. To qualify as direct evidence of discrimination, a plaintiff must show that the remark at issue was related to challenged employment action. *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1403 (7th Cir. 1996); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000) (reasoning that the fact that someone other than the relevant decision maker expressed discriminatory feelings is not evidence that the challenged employment action was discrimination). Accordingly, the Court concludes that Gutman's 1995 transfer from the Nuclear Department and Beane's allegedly abusive treatment of Gutman cannot serve as the basis for Gutman's claim that Pratt discriminated against him based on his age.

Regarding his termination, Gutman argues that the following facts constitute direct evidence that he was discharged based on his age: (i) Berger knew Gutman's age when he approved Parker's recommendation to terminate Gutman; (ii) Parker testified at her deposition that although she remembers talking to Berger regarding Gutman's termination, she could not remember what was said during that conversation; (iii) Beane and Kennedy made age-related comments to Gutman in 1995;

and (iv) Pratt's alleged prior age-based discrimination of Gutman. None of these constitute direct evidence of discrimination.

As an initial matter, the Court notes that Gutman's citations to the record do not support his current arguments. Specifically, the cited references do not establish that Berger knew Gutman's age when he approved Parker's recommendation to terminate him. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3 (citing Parker Dep. at 36-37).) Nor do the references support Gutman's assertion that Beane was involved in the termination decision. (*Id.* at 4 (citing Pl.'s Add. Material Facts ¶¶ 11-17; Pl.'s Rule 56.1 Resp. to Def.'s Statement of Material Facts, Exs. 2-12).) Also, as noted previously, Gutman has not presented any evidence, other than his self-serving and conclusory assertions, that Pratt discriminated against him because of his age in the past. *Essex*, 111 F.3d at 1310.

Even if these facts were supported by the record, the Court would still conclude that Gutman failed to present direct evidence of age discrimination. In *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000), the Seventh Circuit explained that direct evidence of age discrimination must be "sufficient . . . to allow a reasonable jury to conclude that but for [the plaintiff's] age . . . [the defendant] would not have fired him." *See also Cowan v. Glenbrook Sec. Servs. Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (stating that direct evidence is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption") (internal quotation and citation omitted). The fact that Berger knew Gutman's age when he approved Parker's recommendation to terminate him does not constitute evidence that Berger approved Gutman's termination *because* of his age. Similarly, the fact that Parker could not remember what was said during her conversation with Berger regarding Gutman's termination does not constitute evidence that Parker recommended terminating Gutman *because* of his age. Finally,

Beane and Kennedy's 1995 age-based comments do not constitute direct evidence that Pratt fired Gutman in 1998 based on his age. To constitute direct evidence of discrimination, the comments at issue must be either "contemporaneous with the discharge or causally related to the discharge decision making process." *Robin*, 200 F.3d at 1089 (internal quotation and citation omitted). In this case—as in *Robin*—the statements at issue preceded the challenged employment action by more than two years. *Id.* Furthermore, it is undisputed that neither Beane nor Kennedy participated in the decision to terminate Gutman, nor did they convey any age-based remarks regarding Gutman to the relevant decision makers. (Def.'s Statement of Material Facts ¶¶ 42-43.) Accordingly, the Court concludes that Gutman failed to present direct evidence of age discrimination. *Hunt*, 219 F.3d at 652 (reasoning that the fact that someone other than the relevant decision maker expressed discriminatory feelings is not evidence that the challenged employment action was discrimination).

Indirect Evidence

Under the indirect method of proof, the plaintiff bears the burden of establishing a prima facie case of discrimination. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for terminating the plaintiff. *Lesch*, 282 F.3d at 472. If the plaintiff fails to establish that the defendant's proffered reasons are pretexts for discrimination, the defendant is entitled to summary judgment. *Id.* at 472-73.

A. Prima Facie Case

To establish a prima facie case of discriminatory termination under the ADEA, a plaintiff must demonstrate that (1) he was over forty years of age, (2) he was meeting his employer's legitimate expectations, (3) he was fired, and (4) similarly situated, substantially younger employees were treated more favorably. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002).

Conceding that Gutman has established the first and third prongs of his prima facie case, Pratt argues that Gutman has failed to demonstrate that he was meeting Pratt's legitimate expectations and that similarly situated, substantially younger employees were treated more favorably.

1. Whether Gutman Was Meeting Pratt's Legitimate Expectations

Pratt contends that Gutman failed to meet the company's legitimate expectation that employees provide adequate medical documentation to substantiate health-related absences from work. Gutman argues that he provided ample documentation regarding his medical condition. The Court concludes that the facts do not support Gutman's position. It is undisputed that Gutman provided Pratt with only two notes from his doctors. The notes—both dated October 5, 1998—do not contain any explanation of Gutman's condition. Dr. Markarian's note contains no diagnosis and Dr. Bielski's note states only that Gutman could not return to work until he underwent an echocardiogram. Pratt repeatedly informed Gutman that these notes were insufficient to excuse his absence from work. Gutman underwent the echocardiogram on October 13 but he did not return to work afterwards. Nor did he provide Pratt with further documentation from his doctors regarding his medical condition. Because the undisputed evidence establishes that Gutman did not provide Pratt with the requested medical documentation to substantiate his health-related absence from work, the Court concludes that Gutman failed to demonstrate that he was meeting Pratt's legitimate expectations.

2. Whether Similarly Situated, Substantially Younger Employees Were Treated More Favorably

Gutman has made no effort to establish that a similarly situated, substantially younger employee was treated more favorably. He does not point to any admissible evidence establishing

-15-

that the employee who replaced him was substantially younger.[5]  Nor does he identify any

substantially younger employee who was not fired despite the fact that the employee failed to provide

sufficient medical documentation to substantiate an absence from work.  Accordingly, Pratt is

entitled to summary judgment based on Gutman's failure to establish a prima facie case.  *Traylor

v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002) (holding that summary judgment is proper if plaintiff

fails to establish any element of his prima facie case).

B.  Pretext

Even if Gutman had established a prima facie case, the Court would still conclude that Pratt

is entitled to summary judgment because Gutman failed to demonstrate that Pratt's asserted reason

for terminating him was a pretext for discrimination.  Pratt states that it fired Gutman because he

failed to provide sufficient medical documentation to substantiate his prolonged absence from work.

Gutman contends Pratt did not have a written policy that required employees to provide the company

with documentation to excuse health-related absences from work.  Gutman reasons that a factfinder

could infer from the absence of a written policy that Pratt's asserted reliance on that policy was a

pretext for discrimination.  The problem with this argument is that Gutman has not provided any

evidence that Pratt did not have such a policy.  Without citation to the record, Gutman states that

Pratt did not produce a copy of the company policy.  Even if this is true, it is meaningless unless

Gutman establishes that he requested a copy of the policy during discovery.  Pratt cannot be faulted

for failing to produce a document Gutman did not request.  Accordingly, the Court concludes that

---

[5] In his deposition, Gutman testified that two Pratt employees told him that he was replaced by a younger African-American.  Because a party may not rely on hearsay evidence to overcome a summary judgment motion, *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001), the Court will ignore Gutman's deposition testimony that relies on the hearsay statements of these two employees.

the fact that Pratt did not produce a copy of its written policy during discovery, by itself, does not establish that Pratt's reliance on that policy was a pretext for discrimination.

Gutman next argues that, assuming the policy exists, the fact that Pratt did not notify him of the policy prior to his termination establishes that Pratt's reliance on that policy was a pretext for discrimination. Again, the facts do not support Gutman's argument. It is undisputed that Pratt informed Gutman that the two notes from his doctors were insufficient to excuse his absences and that three unexcused absences would subject him to immediate termination. Whether Pratt separately provided Gutman with a written copy of a company policy that requires employees to substantiate health-related absences with medical documentation is beside the point. It is undisputed that Pratt informed Gutman that he needed to provide such information. Accordingly, the Court concludes that Gutman failed to establish that Pratt's asserted reason for his termination was a pretext for discrimination.

## II. Race Discrimination Claim

Gutman contends that he has presented sufficient indirect evidence of racial discrimination to defeat Pratt's motion for summary judgment. Generally, to establish a prima facie case of discriminatory termination based on race, a plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate expectations, (3) he was fired, and (4) similarly situated employees of a different race were not fired. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 639 (7th Cir. 2001). In a reverse-discrimination case, however, the first prong does not apply, i.e., a Caucasian employee cannot show that he is a member of a protected class. Instead, Caucasian employees must establish sufficient background circumstances that "support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills*

*v. Health Care Serv. Corp.*, 171 F.3d 450, 455 (7th Cir. 1999) (internal quotation and citation omitted).[6] Some examples of circumstances that would support such an inference are ". . . schemes to fix performance ratings to [the plaintiff's] detriment, that the hiring system seemed rigged against [the plaintiff] because it departed from the usual procedures in an 'unprecedented fashion,' or that [the plaintiff was] passed over despite superior qualifications." *Id.* at 455 (citing *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). Another example might be evidence that the plaintiff was the only Caucasian employee in a department and that nearly all of the decision makers were racial minorities. *Id.* (citing *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1534 (10th Cir. 1995)). A reverse-discrimination plaintiff may also show that "the person hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a [minority candidate], and there was a pattern of hiring [minority candidates] in the past." *Id.* (citing *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997)).

In this case, Pratt concedes that Gutman's termination qualifies as an adverse employment action. Pratt argues that it is entitled to summary judgment based on Gutman's failure to establish the remaining three prongs of his prima facie case. Specifically, Pratt contends that Gutman cannot

---

[6] Whether courts should use a modified prima facie case in reverse-discrimination cases is the subject of a circuit split. *Compare Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (reverse discrimination plaintiffs required to establish modified "background circumstance" prima facie case); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999) (same); *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997) (same); *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992) (same); *Murry v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (same) *with Bass v. Bd. of County Comm'r*, 256 F.3d 1095, 1103-04 (11th Cir. 2001) (rejecting modified "background circumstances" prima facie case); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000) (same); *Iadimarco v. Runyon*, 190 F.3d 151, 159-64 (3d Cir. 1999) (same). Because *Mills* is binding authority in this district, the Court shall apply the modified "background circumstance" prima facie case. However, the Court notes that even if the Supreme Court or the Seventh Circuit were to overrule *Mills*, Pratt would still be entitled to summary judgment based on Gutman's failure to establish the other elements of his prima facie case.

show (i) sufficient background facts that would support an inference that Pratt is one of those unusual employers who discriminates against the majority, (ii) that he was meeting Pratt's legitimate expectations, or (iii) that similarly situated non-Caucasian employees were treated more favorably.

## 1. Background Circumstances

Gutman argues that inconsistent statements from Pratt employees regarding the identity of his replacement support an inference that Pratt discriminates against Caucasian employees. Specifically, Gutman points out that Parker's affidavit asserts that Gutman was replaced by Tom Galante, but that Glenn Beane testified in his deposition that he could not remember whether he hired Beverly Graham or Tom Galante to fill Gutman's previous position. The Court concludes that these statements do not support an inference that Pratt discriminates against Caucasian employees. Parker's affidavit and Beane's deposition testimony are not inconsistent. Beane testified that (i) he interviewed both Graham and Galante to fill Gutman's previous position at roughly the same time, (ii) he hired one of the candidates to fill Gutman's position, and (iii) within a month, another employee left and Beane hired the other candidate for the new vacancy. (Beane Dep. at 39-30.) The fact that Beane could not remember which candidate he hired first does not indicate anything suspicious about Pratt's employment practices. Accordingly, the Court concludes that Gutman has failed to establish sufficient background circumstances that would support an inference that Pratt discriminates against Caucasian employees.[7]

---

[7] Gutman also relies on the deposition testimony of another contract administrator named Dennis Rokop to support an inference that Pratt did not hire any person to fill Gutman's position. As an initial matter, the Court notes that because Gutman did not list this fact in his statement of material facts, he may not rely on it in his brief. *Markam v. White*, 172 F.3d 486, 490 (7th Cir. 1999) (holding that district court is "entitled to disregard references to depositions and other discovery materials that appeared only in the supporting brief, and to decide the motion based on the factual record outlined [in the parties' statements of material facts]"). Even if the Court were to consider

## 2. Remaining Prongs of the Prima Facie Case

Gutman's argument that he was meeting Pratt's legitimate expectations fails for the reasons noted previously. *See supra* at 14-15. Regarding the fourth prong of his prima facie case, Gutman has not presented any evidence that similarly situated, non-Caucasian employees were treated more favorably. Instead, he argues that compliance with all of the requirements of the prima facie case is not necessary if a plaintiff establishes a logical reason to believe that the employer's decision rests on a legally forbidden ground. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10 (citing *Mills*, 171 F.3d at 454 n.1). The footnote in Mills is not as broad as Gutman asserts. In that footnote, the *Mills* court acknowledged only that in certain situations a plaintiff may be able to shift the burden to the defendant even though he had not established the fourth prong of his prima facie case—the court did not state that a plaintiff could skip other prongs of the prima facie case. Even if this Court were to assume that Gutman's characterization of *Mills* is correct, the Court concludes that Gutman has not provided any logical reason to believe that Pratt's decision to terminate him was based on his race. Accordingly, Pratt is entitled to summary judgment on Gutman's race discrimination claim.

## Pretext

As noted previously, Pratt asserts that it fired Gutman because he failed to provide adequate medical documentation to substantiate his prolonged absence from work. Gutman relies on the same

---

this argument, the Court would conclude that Rokop's testimony does not support an inference that Pratt discriminates against Caucasian employees. Rokop testified only that other employees in the department took over Gutman's duties when he was terminated. It is natural for the other employees in a department to take over the duties of a terminated employee until a replacement is hired. Because Rokop did not testify that Pratt never hired an individual to fill Gutman's position, his testimony does not support an inference that Parker's affidavit is false, i.e., it does not support Gutman's position that Parker lied when she stated that Pratt hired Tom Galante to fill Gutman's previous position.

pretext arguments he made in the context of his ADEA claim. Those arguments fail for the reasons stated previously. *See supra* at 16-17.

### III. Unlawful Termination in Retaliation for Filing Worker's Compensation Claim

In *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994), the Seventh Circuit stated that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." Accordingly, the Court dismisses Gutman's state-law claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Pratt's motion for summary judgment on Gutman's federal claims, and DISMISSES WITHOUT PREJUDICE Gutman's state-law claim.


**E N T E R:**


Nan R. Nolan

**Nan R. Nolan**

**United States Magistrate Judge**


Dated: 9 | 30 | 02